IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID SCHULTZ,)
)
    Plaintiff,) Civil Action No. 16-1433
) Magistrate Judge Maureen P. Kelly
    v.)
) Re: ECF No. 39
MEGAN J. BRENNAN, United States)
Postmaster General,)
)
    Defendant.

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff David Schultz ("Plaintiff") initiated this action against his employer, Defendant Megan J. Brennan, in her capacity as United States Postmaster General ("USPS" or "Defendant"), alleging that he was subject to discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, (the "Rehabilitation Act") as a result of Defendant's failure to reasonably accommodate his tinnitus during the period September 2015 through July 2017.

Presently before the Court is the USPS's Motion for Summary Judgment, ECF No. 39, contending that as a matter of law, Plaintiff has not established a prima facie case that his employer failed to reasonably accommodate his disability, nor facts to infer that he was retaliated against in any way. For the reasons that follow, the Motion for Summary Judgment will be granted.[1]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF No. 11.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff David Schultz has been employed by the USPS as a mail clerk for over thirty years, with the vast majority of that time assigned to the post office in Butler, Pennsylvania. ECF No. 47-1 at 2. Plaintiff suffers from tinnitus and high blood pressure, which can cause migraine headaches.

As a mail clerk, Plaintiff sorts mail for distribution and works at a window counter. Id. at 2-3. Until July 2017, Plaintiff typically sorted mail between 4:00 a.m. and 9:00 a.m. each morning, and was joined by individual mail carriers beginning at approximately 7:45 a.m. Plaintiff alleges that beginning in 2015, mail carriers would "blast" music, playing radios, and this would irritate him. Id. at 3, 16, 20. Loud music would cause Plaintiff's blood pressure to rise, and increase ringing in his ears. The ringing would cause headaches or migraines, forcing Plaintiff to miss 12-14 days of work over the period from November 2015 through July 2017. Id. 4-5. Plaintiff treats his headaches with over-the-counter Excedrine Migraine or Advil. Id. at 17.

The Butler Post Office mail sorting floor has been equipped with a centrally located radio with speakers for at least thirty years. Id. at 20-21. While various employees disagreed over the type of music to be played, a compromise was worked out and in place for approximately six years, and music stations would be rotated by day. Id. at 37. Plaintiff was "mostly" able to work under these conditions and did not lodge any complaints. Id. Beginning in 2015, however, certain mail carriers would turn the radio on to a rock station with "headbanging music" and would not agree to turn down the volume or change the station to "milder music." In September 2015, Plaintiff complained to John Jackson, a supervisor, and stated that he "needed reasonable

2

accommodations [because] I cannot be listening to the loud and irritating music." Id. at 22. Plaintiff states that although Mr. Jackson agreed to resolve the situation, "nothing ever happened." Id. at 23. On October 22, 2015, Plaintiff again asked for "an accommodation" to turn down the radio and to change the station from "hard rock." A district manager however, told him to wear earplugs or to use ear muffs over his hearing aids. Id. 23-25. Plaintiff states he was told he could not change the radio station on his own, and that if he needed an accommodation, he would need to "go to the accommodations committee." Id. at 28. After this "confrontation," Plaintiff spoke with the facility postmaster on October 25, 2015, and submitted a formal request for accommodation along with medical documentation of his tinnitus and need for quieter working conditions. Id. at 28-29; 42-2. As a result, on October 30, 2015, the Butler Postmaster ordered that the central radio volume be lowered or turned off while Plaintiff was on the sorting floor, and permitted Plaintiff to increase the volume of his personal mail sorting equipment ("PASS machine"). ECF No. 42-3.

When this solution proved inadequate to Plaintiff due to mail carrier noncompliance, Plaintiff lodged a second written complaint in January 2016. In response, on January 22, 2016, the Postmaster ordered that the facility radio be removed and directed employees to use earbuds when listening to music on personal devices. ECF No. 47-1 at 30, 36, ECF No. 42-4. This resolved the situation for a few months, until one of the carriers brought a radio work. Other carriers followed suit, and each carrier listened to music on his or her own radio or cell phone. ECF No. 47-1 at 35. These personal radios interfered with Plaintiff's ability to hear directions on his PASS machine and led him to verbally complain to various supervising personnel. While the volume of each radio or cell phone was not necessarily troublesome, Plaintiff found the noise

3

disrupted his ability to hear well. Id. at 37. Through legal counsel, Plaintiff submitted a second formal request for accommodation on July 18, 2017, indicating that since March 2016, radio noise had continued to occur while Plaintiff was present sorting mail. Plaintiff requested that all radios be banned from the work floor. ECF No. 42-7 at 2. Thereafter, Plaintiff's schedule was configured so that Plaintiff was assigned to a window counter on a different floor during the 2.5 hours each morning that mail carriers are present on the mail distribution floor. In addition, all audible music was banned on the workroom floor as of October 31, 2017, whenever Plaintiff was present. ECF Nos. 42-10, 45 at 8-10.

Plaintiff indicates that despite the prohibition against audible music after January 2016, no mail carrier was disciplined for violating the accommodation rule, and sporadic violations continued for 18 months until his schedule was revised. While there is conflicting evidence that at least one supervisor told Plaintiff he would "take care" of the violations but failed to do so, other supervisory personnel addressed the issue when raised by Plaintiff, and instructed disobedient employees to use ear buds or turn off their devices. ECF No. 47-7. In addition, Plaintiff was informed that in the event additional steps were necessary, he was to contact the accommodations committee, but did so only in January 2016 and again in July 2017, and each of these requests were followed by affirmative accommodation steps to resolve his complaints. ECF Nos. 42-3, 42-10.

Plaintiff commenced this action on September 16, 2016, with the filing of a Complaint alleging claims for the failure to accommodate his disability and retaliation in the form of reduced overtime hours. With the completion of discovery and upon the filing of Defendant's

Motion for Summary Judgment, Plaintiff has abandoned his retaliation claim, leaving only his failure to accommodate discrimination claim for resolution. ECF No. 44 at 18.

## II. STANDARD OF REVIEW

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. McGreevy, 413 F.3d at 363; Simpson v. Kay Jewelers, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (citing Fuentes v. Perskie, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). As to materiality, the relevant substantive law identifies which facts are material. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. Further, inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

### III. DISCUSSION

The Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a); Shiring v. Runyon, 90 F.3d 827, 830–31 (3d Cir. 1996) ("The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*, is applicable only to federal employers and employers who receive federal funding.... The Rehabilitation Act forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement.").

"To make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated" or "suffered an otherwise adverse employment decision as a result of discrimination." Donahue v. Consolidated Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000) (quoting Shiring v. Runyon, 90 F.3d at 831); Khoury v. Secretary United States Army, 677 F. App'x. 735, 737 (3d Cir. 2017) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004), *cert. denied sub*

6

*nom.* Khoury v. Speer, 138 S. Ct. 332, 199 L. Ed. 2d 213 (2017)).[2] Discrimination or an adverse employment decision under the Rehabilitation Act includes the failure to make reasonable accommodations for a plaintiff's disabilities. Khoury, 677 F. App'x. at 737.

To prove a failure to accommodate, Plaintiff must show (1) his employer knew about his disability; (2) he requested accommodations for his disability; (3) his employer failed to make a good faith effort in seeking accommodations; and (4) Plaintiff could have been reasonably accommodated but for Defendant's lack of good faith. Hair v. Fayette County of Pennsylvania, 265 F. Supp. 3d 544, 559 (W.D. Pa. 2017) (citing Evans v. Cernics, Inc., 2016 WL 4382751, at *10 (W.D. Pa. Aug. 16, 2016), and Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir. 1999)). However, a plaintiff cannot insist on an optimal or preferred accommodation. Khoury, 677 F. App'x at 737. He "'cannot make [the] employer provide a specific accommodation if another reasonable accommodation is instead provided.'" Solomon v. School Dist. of Philadelphia, 532 F. App'x 154, 158 (3d Cir. 2013) (quoting Hankins v. The Gap, Inc., 84 F.3d 797, 800–01 (6th Cir. 1996)). See also Moore v. CVS Rx Services, Inc., 142 F. Supp. 3d 321, 341 (M.D. Pa. 2015).

In this instance, Plaintiff's disability is not disputed, nor is the fact that he requested accommodations for his disability. Rather, Plaintiff insists that despite the various and escalating efforts made by USPS supervising personnel to eliminate audible music during Plaintiff's shift, including his reassignment to a service window away from the sorting floor, USPS failed to

---

[2] As noted in Khoury, 677 F. App'x at 737, "[t]hough the framework set forth in Williams pertains to a claim brought under the Americans with Disabilities Act, the 'substantive standards for determining liability are the same' under both the Americans with Disabilities Act and the Rehabilitation Act. Antol v. Perry, 82 F.3d 1291, 1299 (3d Cir. 1996) (internal quotation marks omitted)."

reasonably accommodate his disability because it failed to discipline non-compliant personnel who circumvented instructions to use ear-buds when playing music, and thereby required Plaintiff to make additional complaints and requests for accommodation. ECF No. 44 at 9-16. USPS states that its continuing efforts satisfy its duty to reasonably accommodate Plaintiff as a matter of law. The Court agrees.

An employer demonstrates good faith to identify reasonable accommodations in various ways, including meeting with the employee, requesting information about the employee's condition and limitations, asking what the employee wants, showing signs of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome. Sessoms v. Trustees of University of Pennsylvania, 739 F. App'x 84, 87 (3d Cir. 2018) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d at 319-20). While a request for accommodations does not need to be specific or contain magic words, the employer must be aware of the employee's disability, and an employee must show that his employer is aware that various accommodations offered are not satisfactory to give rise to an obligation on the part of the employer to explore additional reasonable accommodations. McGlone v. Philadelphia Gas Works, 773 F. App'x 606, 610-11 (3d Cir. 2018) (citing Taylor, 184 F.3d at 313).

In this instance, the undisputed evidence establishes that Plaintiff first documented his disability through a letter dated October 28, 2015. ECF No. 47-6. Medical records indicate that loud sounds are "most likely aggravating his tinnitus. If the Employer is unwilling to turn down the music levels in his work area, then a doctor's order stating 'due to loud noises which may aggravate the veteran's tinnitus, he will need to be relocated to an area with minimal noise

8

levels.'" ECF No. 47-3. Plaintiff's evidence does not establish a need to work in silence, but only that the volume of music in Plaintiff's work area be "turned down."

It is further undisputed that upon receipt of Plaintiff's request and medical documentation, a meeting was scheduled to discern his individual needs, and all floor employees were instructed to turn off the central radio whenever Plaintiff was on the floor. ECF No. 47-1 at 28-30. Plaintiff's testimony establishes that by January 2016, this proved ineffective because co-employees failed to abide by USPS instructions. When Plaintiff lodged a complaint, the central radio was removed. Id. at 30 - 31. Plaintiff concedes that this satisfactorily improved the situation for a few months until mail carriers began bringing in personal radios and devices. Plaintiff complained to supervisory staff who instructed mail carriers to lower the volume on personal devices. ECF No. 47-7 at 8-12. By July 2017, this proved ineffective, and Plaintiff notified the accommodations committee of his request that all radios be banned. ECF Nos. 47-8, 47-9. USPS complied, and radios were banned on the work floor whenever Plaintiff was present. In addition, Plaintiff's work day was configured so that he was no longer present on the work floor while mail carriers were in the building.

Despite short periods of employee noncompliance, construing all of the evidence in the light most favorable to Plaintiff, the record unequivocally establishes that once made aware of Plaintiff's need for additional accommodations, the USPS consistently engaged with Plaintiff in interactive dialogue to identify and implement appropriate additional steps to accommodate his tinnitus. Against overwhelming evidence of engagement in an interactive process, no reasonable juror could find that USPS failed to reasonably accommodate Plaintiff's disability, or that the USPS violated the Rehabilitation Act by discriminating against Plaintiff because of his

disability. Khoury, 677 F. App'x at 737; McGlone v. Philadelphia Gas Works, 733 F. App'x at 611. In the absence of any genuine issue of material fact, summary judgment will be entered in favor of Defendant.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is properly granted. Accordingly, the following Order is entered:

## ORDER

AND NOW, this 26th day of November, 2018, upon consideration of the Motion for Summary Judgment filed on behalf of Defendant Megan J. Brennan, United States Postmaster General, ECF No. 39, and the briefs and exhibits filed in support and in opposition thereto, and for the reasons set forth in the accompanying Opinion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment is GRANTED, and judgement shall be entered in favor of Defendant Megan J. Brennan, United States Postmaster General, and against Plaintiff David Schultz.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing